

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EDITH M. GREEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:05-CV-045-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Edith M. Green seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

Green objects to the Commissioner's finding of no disability contending that the Administrative Law Judge (ALJ) made determinations that are not supported by substantial evidence. Specifically, she contends that the ALJ's determination that her impairments do not equal a listed impairment in the Commissioner's regulations is not supported by substantial evidence and that his determination that she retained the residual functional capacity to perform light work with limitations is not supported by substantial evidence.

The court's role in reviewing a Social Security appeal is to determine whether the Commissioner's decision is supported by substantial evidence and whether the decision was reached through the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citation omitted). In this case, the ALJ did not apply the correct legal standard in determining Green's residual functional capacity and his determination is not supported by substantial evidence. Therefore, under the authority of 42 U.S.C. § 405, this court recommends that the District Court reverse the Commissioner's decision and remand Green's case for further administrative proceedings.

## I.  Discussion

Green was diagnosed with bilateral carpal tunnel syndrome in February 2000 and underwent right carpal tunnel release in April 2000. (Tr. 98-99, 102-03.) Green's surgeon reported that Green's recovery was "very slow" as a result of continued swelling in her right hand. (Tr. 92; *see also* Tr. 91, 93-94.) Nathan Wilson, M.D., evaluated Green's condition in August 2000 and noted signs of early mild osteopenia and dystrophic changes in her right hand which included a difference in the temperature of her hand as compared with her left hand and loss of skin patterns in her fingers. (Tr. 153.)

The following month Dr. Wilson examined Green again noting that she suffered from intolerable pain and had no "real functional use of her right upper extremity." (Tr. 150.) He believed her symptoms suggested that she suffered from Reflex Sympathetic Dystrophy Syndrome (RSDS). (*Id.*) Dr. Wilson later affirmatively diagnosed Green with RSDS which

was confirmed by Patrick Molligan, M.D., who believed Green's RSDS was "quite severe in nature." (Tr. 115, 147.)

RSDS, also known as complex regional pain syndrome, is a chronic pain condition that often results from surgery, trauma, or injury to an extremity. According to The National Institute of Neurological Disorders and Stroke, a component of the National Institutes of Health, the condition is believed to be the result of dysfunction in the central or peripheral nervous systems that causes burning pain; increased skin sensitivity; swelling and stiffness; changes in nail and hair growth patterns; changes in skin temperature, color, and texture; and motor disability with decreased ability to move the affected extremity.[1]

On October 20, 2003, the Commissioner published Policy Interpretation Ruling 03-02p which sets forth the Social Security Administration's policies regarding the evaluation of claims involving RSDS. The Ruling was not published until after the ALJ's decision but was published before the Appeals Council denied Green's request for review and, although the Commissioner's Rulings are not binding on this court, the court may consult such rulings and rely upon them when evaluating an ALJ's decision. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). Ruling 03-02p defines RSDS as a chronic pain syndrome that may result from disease, surgery, or injury. The Ruling advises that although the cause of the disorder has not yet been determined, dysfunction of the sympathetic nervous system may be to

---

[1] *See* The National Institute of Neurological Disorders and Stroke www.ninds.nih.gov/disorders/reflex_sympathetic_dystrophy/detail_reflex_sympathetic__dystrophy.htm.

blame; "[a]bnormal sympathetic nervous system function may produce inappropriate or exaggerated neural signals that may be misinterpreted as pain." *Id.* The condition is characterized by complaints of intense pain and typically involves signs of autonomic dysfunction. *Id.*

Ruling 03-02p also addresses the procedure under which the ALJ must consider a claimant's RSDS and advises that the condition may be the basis of disability when the claimant's record includes medically documented evidence of symptoms associated with the condition. In this case there is medically documented evidence that Green suffered from RSDS. (*See, e.g.,* Tr. 149, 153.) When there is medically documented evidence of RSDS, as with other impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms in assessing residual functional capacity. S.S.R. 03-02p; S.S.R. 96-7p. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities on a regular and continuing basis." S.S.R. 03-02p.

The Commissioner's regulations and rulings acknowledge that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence" and "symptoms, such as pain, are subjective and difficult to quantify." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2005); *see also* S.S.R. 96-7p. Thus, in determining the persistence and intensity of pain, the ALJ must consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

4

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.*

The ALJ did not apply the foregoing legal standards in this case. Although he did state that he found Green's testimony to be "generally credible" (Tr. 19), he also stated:

> I recognize that the claimant may experience some degree of pain or discomfort at times of overexertion, but even a moderate level of pain is not, by itself, incompatible with the performance of certain levels of sustained work activity . . . The record contains no objective signs of an incapacitating impairment, such as muscle atrophy, no positive Tinel's sign, or grossly abnormal neurological deficits.

(Tr. 16.) The ALJ's statements and conclusions deprive his decision of substantial evidence. First, although "moderate pain" is not itself disabling, the record and Ruling 03-02p indicate that Green suffers from a condition that causes severe rather than moderate pain. *See* S.S.R. 03-02p; Tr. 115, 145, 238. In addition, Green did not experience "a degree of pain or discomfort at times of overexertion"; she experienced constant burning pain and was consistently hypersensitive to touch. (Tr. 115, 149, 241.) Further, the ALJ was incorrect in concluding that there was no record of a positive Tinel's sign; the record includes evidence that a Tinel's test performed by Green's primary specialist was positive.[2] (Tr. 153.)

---

[2] Tinel's sign is a test used to detect irritated nerves. Wikipedia, http://en.wikipedia.org/wiki/Tinel's_sign (last accessed December 1, 2005).

5

In addition to the foregoing, the ALJ did not consider Green's testimony regarding her daily activities; he did not consider the side effects of her medication and he did not consider the treatment prescribed by her physicians. For example, Green was prescribed narcotics that cause drowsiness, dizziness, and sedation (Tr. 144, 196) and, although required to do so, the ALJ did not consider the side-effects these medications might have had on her ability to work. (*See* Tr. 13-20); 20 C.F.R. §§ 404.1529(c), 416.929(c). Although a medical expert testified at the hearing, the ALJ did not question him in regard to the effect the medications would have on Green's ability to sustain work or the frequency and intensity of her pain and the effect her pain would have on her ability to sustain work. (Tr. 234-57.)

Finally, evidence from examining physicians is contrary to the ALJ's determination that Green could perform the lifting requirements of light work. (Tr. 174, 190.)

## II.    Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's decision and remand Green's case for further administrative proceedings.

## III.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall

bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: December 19, 2005.

NANCY M. KOENIG
United States Magistrate Judge